*854 OPINION.
Morris:
In determining whether the transaction entered into between the petitioner and his brother and the Clem Realty Co., Inc., resulted in a taxable profit in 1920, we must determine whether it was an exchange of property for other property within the meaning of section 202 of the Revenue Act of 1918, or, as the petitioner contends, a gift, and therefore resulted in no taxable gain. That section of the Act provides in part:
(a) That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—
* * ⅜ * * ⅜ *
(b) When property is exchanged for other property, the property received in exchange shall for the purpose of determining gain or loss be treated as the equivalent of cash to the amount of its fair market value, if any; * ⅜ *
The respondent’s counsel contends that the transaction falls within the purview of that section and article 1566 of Regulations 45 (1920 Edition), and is, therefore, taxable. That article of the regulations provides in part as follows:
Esochange of property and stock. — Where property is transferred to a corporation in exchange for its stock, the exchange constitutes a closed transaction and the former owner of the property realizes a gain or loss if the stock has a market value, and such market value is greater or less than the cost or the fair market value as of March 1, 1913 (if acquired prior thereto), of the property given in exchange.
The petitioner contends that the capital stock of the company was paid for in cash and that the properties in question were transferred to it as a gift. In order to sustain the petitioner, therefore, we must find that there was an intention to make a gift, that a gift was in fact accomplished, and, furthermore, that the element of consideration was wholly absent from the transaction.
At the meeting of the stockholders of January 9, 1920, the chairman “announced that all subscriptions to stock had been paid in full,” and at the meeting of the board of directors on the same date the president “ announced that the entire capital stock of the company * * * had been issued, and paid for in cash at the rate pf $100 per share, * * On this subject, Clarence J. Hand, one *855 of the incorporators, who originally held four shares of stock, testified as follows:
Q. You were one of the incorporators, were you not?
A. I was.
Q. Did you ever pay any actual cash to Mr. Mount for your four shares?
A. If you mean by that, did I turn over, to him currency, no.
Q. Did you turn over to him a check?
A. No.
Q. In what way did you pay for your stock?
A. I signed a subscription blank and I signed the certificate of incorporation, and I was, at all times, in position to turn over the cash.
Q. Did you ever turn over any cash for that stock?
A. I did not.
Q. Did Mr. Edward H. Mount ever turn over any cash for the stock?
A. I do not know.
Q. Did you, as secretary, ever have any knowledge of his having turned over any such cash?
A. I had knowledge that Mr. Mount stated in my presence that the twelve shares of stock of the corporation had been paid for, and that the corporation was ready to do business.
Obviously, unless some one else paid the cash for the stock of Hand, which does not appear to be the case, the statements made at the meeting of the stockholders and the board of directors are unfounded in fact. At any rate, this testimony creates in our minds sufficient doubt of the actual payment of cash to require more positive proof on the subject.
The petitioner’s counsel points out that it was provided that the company should take all of the properties jointly conveyed by the Messrs. Mount “at the value at which they had been appraised in inheritance tax proceedings in the Estate of Susan Mount, and the property, 901 Broadway, at the price at which it had been acquired by Edward H. Mount, plus cost of improvements; that if upon an appraisal any of said properties should be found to be of greater value than said prices the excess value of said properties, if any, should be received by the company as a gift from the Messrs. Mount.” He argues that the conveyances were made pursuant to the offers and acceptances arrived at and consequently fully subject to all of the said terms and conditions, including the expressed provisions, that the excess values, if any, should be construed as a gift to the corporation; that there is no evidence of the transfer on any other basis; that the shares of stock of the company were not salable and the fair market value thereof was at no time in excess of the value of one-half interest in the properties covered by the deed of January 9, 1920, and-an entire interest in the 901 Broadway property.
It is well to state at this juncture that no evidence was offered as to the salability of the company’s stock or as to the fair market value *856 thereof. Therefore, if the respondent’s findings are sustained on the issue presented to us, the values found by him must be approved'-also.
It appears from the minutes of the board of directors of January 9, 1920, that the petitioner and his brother proposed to transfer the properties in question to the company, and that it was “ Resolved, that the corporation undertake to forthwith procure the transfer to Edward H. and Harold K. Mount, respectively, of fifty per cent of its authorized and outstanding stock * * and that after a further resolution with respect to saving the petitioner and his brother harmless from certain liabilities the same said resolution stated “Provided, however, that the Messrs. Mount forthwith procure to be transferred to the corporation, subject to existing outstanding mortgages, liens and taxes, the following properties: [here listing the properties] on the distinct understanding and agreement that the corporation shall take said properties, at the values at which said properties were appraised in inheritance tax proceedings in the Estate of Susan Mount; and further, Provided, that Edward H. Mount forthwith transfer to the corporation, subject to existing mortgages, liens and taxes the property 901 Broadway, New York, at its cost to him.” The aforementioned shares of stock were duly issued on January 9,1920, and the petitioner and his brother became the sole owners of the company’s capital stock. On that same day the petitioner and his brother and wife conveyed the properties in question to the company, exclusive of 901 Broadway, in consideration of $100 “ and other good and valuable consideration,” and, thereafter, on January 19,1920, the petitioner conveyed to the company the said 901 Broadway property, pursuant to the provision in the resolution aforesaid, in consideration of $10’ “ and other good and valuable consideration.” The petitioner attached a note to his income-tax return for 1920 stating that he and his brother conveyed all of their realty to the company and that they received in return therefor the entire capital stock of said company.
Although the record does not show, we are satisfied that the properties transferred by the petitioner to the company were of considerable value, and we must, therefore, recognize that the consideration mentioned in the two conveyances to the company was merely nominal, in fact, this was admitted by counsel for the petitioner, who was himself a witness. Since the stated consideration is admittedly nominal, and since the conveyances provided for the payment of “ other good and valuable consideration,” it was incumbent upon the petitioner to disclose just what constituted this additional consideration, particularly if it did not, in fact, include the stock, but this he did not do.
We are unable to find in the record any evidence of a gift except that which relates to an attempt to make a gift of the excess value *857 over the inheritance-tax values of the properties. It is difficult, if not impossible, to see how this showing can possibly affect the taxable profit to the petitioner. A gift, if it is one in fact, is an unqualified giving up of dominion over the property itself and everything appertaining thereto. Therefore, it is fallacious to say that properties, as in the instant case, passed to the company, and that only a certain portion of the value attached thereto passed by gift. The transaction was either a gift in its entirety or was no gift at all, and mere words of the alleged donor can not possibly affect the value of the properties so given. If the value of the properties can not thus be affected, it must necessarily follow as a corollary that the value of the stock itself, therefore, can not be affected in determining the taxable gain derived from the transaction.
We are of the opinion that the properties conveyed to the company by indentures of January 9 and 19, 1920, were intended to be, and in fact were, a part of the consideration for the capital stock issued to the petitioner and his brother, which brings the case clearty within the principle enunciated in Napoleon B. Burge, 4 B. T. A. 732, wherein we held that the transfer by tenants in common of their undivided interests in a number of oil leases to a corporation in exchange for its capital stock resulted in taxable gain under the provisions of section 202 of the Revenue Act of 1918.
With respect to the shares of capital stock of the Mechanics & Metals National Bank about which there is a dispute, we are unable to find from the record sufficient evidence or information upon which to base a satisfactory conclusion. It appears from the record that the petitioner and his brother acquired 538 shares of capital stock of that bank; that at a meeting of the board of directors of the Clem Realty Co., on April 8, 1920, the petitioner and his brother, having received a subscription warrant entitling them to purchase 269 additional shares of the same stock, offered to sell it to the company, which offer the board decided to accept. Beyond this point the recorded facts tell us little or nothing about the transaction. The respondent’s deficiency notice states that stock of the Mechanics & Metals National Bank was transferred to the Clem Realty Co. “ as at January 1, 1920, value $465.00 per share.” No evidence has been offered with respect to the proper values to be used and we can, therefore, offer no comment on the subject. The petitioner’s counsel states in his brief that the petitioner did not transfer in January, 1920, a one-half interest in 438 shares of Mechanics & Metals Bank stock, and as to the date we believe he is correct, because it appears that the stock was not in fact offered to the company until at. or after the meeting of the board of directors held on April 8, 1920.
At that meeting, it will be observed, the offer was to sell the subscription warrant for 269 shares, together with “ the original stock, *858 or both,” whereas the resolution as passed by the board provides for the acquisition of the subscription warrant only. We do not know whether the original shares were also transferred by reason of that resolution or not, or whether cash was paid for them when they were transferred, or whether the only consideration was the original issue of capital stock. The testimony of the petitioner’s witness, who appeared as attorney in fact, counsel for the petitioner and as his sole witness, does not explain how many shares were actually transferred, notwithstanding Í .at there is quite a difference of opinion between the petitioner and the respondent on this subject. Furthermore, the petition filed by the petitioner nowhere refers to this stock by name. It is true that there is an allegation with respect to the transfer of real and “ personal ” property, but we have no way of knowing that the reference there is to stock of Mechanics & Metals National Bank. Assuming that it is, the evidence is so vague and indefinite that we can not, as we have already said, reach a satisfactory conc.usion with respect thereto, and because of that fact we must sustain the findings of the respondent in that respect also.

Judgment will be entered for the respondent.